

# NUMBER 13-13-00413-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**THE STATE OF TEXAS,**                                                          **Appellant,**

**v.**

**HORACIO CHAVEZ,**                                                               **Appellee.**

**On appeal from the 264th District Court
of Bell County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

Appellant the State of Texas challenges the trial court's dismissal of its aggravated sexual assault of a child charges against appellee Horacio Chavez. By one issue, the State argues that the trial court abused its discretion in granting Chavez's motion to dismiss on speedy trial grounds. *See* U.S. CONST. amend VI; TEX. CONST. art. I, § 10.

We affirm.

## I. Background[1]

Five months prior to the indictment in this case, Chavez began serving two concurrent ten-year sentences for injury to a child. On March 14, 2007, Chavez was indicted in this case for aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (West Supp. 2012). An affidavit for appellant's arrest was filed with the court prior to the indictment on February 21, 2007. But when it was determined that Chavez was incarcerated, a detainer was filed with the Texas Department of Criminal Justice (TDCJ) on June 27, 2007; the detainer referenced the February 21, pre-indictment arrest warrant. Nearly six years later, on February 22, 2013, the trial court issued a bench warrant compelling Chavez's appearance in court on this charge.

In early March 2013, Chavez requested appointment of counsel, and then on April 15, 2013, Chavez filed a motion to dismiss the indictment, arguing that his constitutional right to a speedy trial had been violated. The State responded, arguing that Chavez failed to timely assert his right to a speedy trial and failed to show how he was prejudiced by the delay. After a hearing, the trial court notified the parties by letter that it was granting Chavez's motion to dismiss, which letter included the following findings and conclusions:

> In [two earlier cases in November 2006], Horacio Chavez was charged by information with 1st Degree Intentional and Knowing Assault With Serious Bodily Injury to a Child Under 15 and . . . with 3rd Degree Injury to a Child . . . . Tammy Bracewell was the investigating Detective on

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

2

both cases and signed affidavits for arrest on October 13, 2006. The affidavits were quite detailed. The Defendant plead [sic] guilty to those cases on November 6, 2006 with plea bargains and waived appeal.

On February 20, 2007, the same Officer Tammy Bracewell submitted an Affidavit for arrest detailing allegations of aggravated sexual assault against the same victim . . . and noted that the Defendant was in prison for 10 years for the assault on that child. A complaint was filed February 21, 2007. On March 14, 2007, Mr. Chavez was indicted with the file containing the affidavit for arrest showing that the Defendant was in prison for 10 years on the assault on the same child. Nothing was done by the District Attorney's office to serve the Defendant or have the Defendant served with the Indictment or to Bench Warrant him back until February 22, 2013 when the Court ordered the Defendant be bench warranted back to Bell County from [TDCJ].

Mr. Chavez had no knowledge an indictment had been issued against him so he could not possibly have been charged with an obligation or responsibility to notify the Court to pick him up or to demand a speedy trial, nor did he waive the right to be served with the indictment.

The State had the obligation to put out the warrant and to notify the Sheriffs office where the Defendant was since they had sentenced him to TDCJ, and to notify the Court of the indictment so the Court could put the case on the arraignment and pre-trial dockets, none of which was done in 2007. This is a case which lay dormant and "fell through the cracks" not through any fault of the Defendant but through lack of diligence by the State. The length of delay is entirely attributed to the State without any apparent justification or excuse. The fact that the Defendant was incarcerated on other cases, one of which included the same victim in this case, is no excuse and actually aggravates the situation because the State knew where Defendant was as he had been sentenced a mere three (3) months prior, the investigating officer was the same in all three cases, as was the Assistant District Attorney.

The State filed a motion to reconsider, which the trial court denied after a hearing. The trial court then issued its written order granting Chavez's motion to dismiss on July 3, 2013. This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(1) (West Supp. 2012) (providing that the State may appeal when the trial court grants a motion to dismiss an indictment).

3

## II. Applicable Law and Standard of Review

The right to a speedy trial is guaranteed by both the United States Constitution and the Texas Constitution. *See* U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10. In *Barker v. Wingo*, the United States Supreme Court established a framework for analyzing speedy trial claims. 407 U.S. 514, 530–31 (1972). The *Barker* framework requires consideration of: (1) the length of the delay; (2) the reasons for the delay; (3) the assertion of the right; and (4) the prejudice to the defendant. *Id.* Claims of a denial of the state speedy-trial right are analyzed under the same four *Barker* factors. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). No single factor is necessary or sufficient to establish a violation of the right to a speedy trial. *Barker*, 407 U.S. at 530, 533. Instead, we weigh the strength of each of the *Barker* factors and then engage in a balancing test in light of "the conduct of both the prosecution and the defendant." *Cantu*, 253 S.W.3d at 281; *see also Barker*, 407 U.S. at 533. The State bears the burden of justifying the length of the delay, and the accused must prove the timely assertion of the right to a speedy trial and prejudice. *See Cantu*, 253 S.W.3d at 280. The accused's burden of proof "varies inversely" with the State's degree of culpability for the delay; in other words, "[t]he greater the State's bad faith or official negligence and the longer its actions delay a trial, the less [an accused] must show actual prejudice or prove diligence in asserting [the] right to a speedy trial." *Id.* at 280–81. After finding that an accused's right to a speedy trial was violated, the charging instrument must be dismissed with prejudice. *See Barker*, 407 U.S. at 533.

We use a bifurcated standard when reviewing the trial court's ruling on a

4

speedy-trial motion. *Cantu*, 253 S.W.3d at 282. Viewing all of the evidence in the light most favorable to the trial court's ruling and giving great deference to the trial court's resolution of disputed facts, we review the factual components of the ruling for an abuse of discretion. *Id.* The legal factors involved in the ruling—such as the balancing of the *Barker* factors—are reviewed de novo. *See id.*

We likewise use a bifurcated standard of review when considering a trial court's decision to dismiss the case. *State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011). We give almost total deference to a trial court's findings of fact that are supported by the record, but review legal conclusions de novo. *Id.*

## III. Discussion

By its sole issue, the State argues that the trial court erred in granting Chavez's motion to dismiss. The State argues that the trial court relied too heavily on the State's negligence in light of the fact that there was no evidence that the State acted intentionally or in an effort to gain a tactical advantage. The State also argues that, in light of the June 2007 TDCJ detainer, the evidence did not support the trial court's finding that Chavez had no knowledge of the charges. Finally, the State argues that Chavez failed to prove he was prejudiced as a result of the delay.

Although the trial court did not find the State acted intentionally, we agree with the trial court that the State's actions in this case—or rather, lack thereof—were inexcusably negligent. Chavez's case clearly "fell through the cracks," as found by the trial court, and the State's failure to timely prosecute the case amounted to more than what the State seems to characterize as a harmless accident. *See Doggett v. State*, 505 U.S. 647, 657

5

(1992) (reasoning that although negligence is less serious than "a deliberate intent to harm the accused's defense," it is still unacceptable and that our tolerance of such official negligence should "var[y] inversely with its protractedness . . . and its consequent threat to the fairness of the accused's trial").   The colloquy at the hearing on Chavez's motion bears this out.   When asked by the trial court what happened in this case, the prosecutor responded as follows:

> Judge, I don't know.  I really don't.  The detainer was placed on him.  I don't know why he wasn't bench warranted back.  I'm not sure how all those procedures work.  I don't know if the detainer means that he's automatically brought back or if somebody then does something to bring him back.

Defense counsel then responded regarding standard procedures:

> The State is assuming that a detainer would be made known to him that he has been indicted.  What I didn't — what I can't understand is this:  [t]he very question the Court is asking.  An indictment returns the normal procedure that I've been looking at in Bell County for the last 42 years is within normally 15 days of an indictment there is an arraignment.  That didn't happen here.  They waited six and a half years to do an arraignment after he was brought back and what triggered him being brought back, I have no idea.  [And] that's the problem.

The State offered no explanation—at this hearing or, later, at the hearing on its motion for reconsideration—as to why Chavez's case lay dormant for nearly six years.

Having reviewed the entire record before the trial court at the time of its ruling, we cannot conclude that it erred in balancing the *Barker* factors in favor of Chavez.  As noted by the trial court in its findings, the offenses for which Chavez was incarcerated at the time of the indictment involved the same victim as the victim alleged in the indictment in this case.   Both the earlier offenses and the indicted offense in this case were investigated by the same detective and handled by the same prosecutor.   In other words,

6

despite being well aware that Chavez was incarcerated, the State did little to ensure that Chavez knew of the new indictment. The only notice Chavez arguably had of the indictment was the TDCJ detainer, which referenced only the pre-indictment February 2007 arrest warrant. When questioned by the trial court, the State could provide no explanation as to why no action had been taken on Chavez's case for nearly six years; in other words, the State did not meet its burden to justify the length of the delay. *See Cantu*, 253 S.W.3d at 280.

The State's negligence in this case was great and the delay was long, and as such, Chavez's burden to show a timely assertion of his rights and prejudice to his defense was lessened. *See id.* at 280–81. Thus, even assuming without deciding that Chavez knew of the detainer placed with TDCJ in June 2007, we conclude that Chavez acted timely when he was served with the trial court's bench warrant in February 2013, the first notice explicitly stating that a case was pending against him in court.[2] *See Doggett*, 505 U.S. at 653–54 (explaining that a defendant cannot be penalized for failing to invoke his speedy trial right when he was unaware of the indictment); *Phillips v. State*, 650 S.W.2d 396, 400 (Tex. Crim. App. 1983) ("Obviously, appellant cannot be faulted for failing to assert a right he did not know he was entitled to."); *see also State v. Howard*, No. 08–12–00206–CR, 2013 WL 3943121, at *3 (Tex. App.—El Paso July 31, 2013, no pet.) (mem. op., not designated for publication) (rejecting the State's argument that the appellant could be faulted for his delay where there was no evidence, one way or the other, whether the appellant, who was incarcerated at the time, had been served with a detainer the State

---

[2] As noted above, the TDCJ detainer referenced only the February 2007 arrest warrant, which was based on the initial complaint by the investigating officer and not the official charges later returned by the grand jury.

7

had filed six years earlier). When he received the bench warrant, Chavez immediately requested appointment of counsel and shortly thereafter asserted his right to a speedy trial by filing a motion to dismiss.

The State argues that Chavez's filing a motion to dismiss rather than a request for a speedy trial weakens his speedy-trial claim because "it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d 273 at 283 (citing *Barker*, 407 U.S. at 534–36; *Zamorano v. State*, 84 S.W.3d 643, 651 n.40 (Tex. Crim. App. 2002)) (other citations omitted). However, a request to dismiss is warranted in some cases if it is determined that the long delay caused enough prejudice that requesting a prompt trial is no longer in the defendant's best interest. *See Zamorano*, 84 S.W.3d at 651 n.40 (noting that a motion to dismiss may alert both the court and the State of the delay and a defendant's lack of acquiescence instead of serving merely as an attempt to escape trial completely); *see also Howard*, 2013 WL 3943121, at *4. Here, Chavez's counsel argued at both hearings in the case that the six-year delay will likely have caused such a degradation in the potential quality of the testimonial evidence that dismissal was the only fair option. Moreover, there was no evidence that Chavez was taking advantage of the delay, or quietly "acquiescing" during the six-year dormancy of the case. Thus, by moving to dismiss the indictment, Chavez alerted the trial court and the State both of the delay and the lack of acquiescence and that a speedy trial was no longer in his best interest. *See Zamorano*, 84 S.W.3d at 651 n.40. Moreover, because of the State's official negligence in not prosecuting Chavez for nearly six years as he sat unrepresented in prison, Chavez's burden to prove diligence in asserting his right to a speedy trial, as

8

noted above, was not as onerous as it otherwise would have been. *See Cantu*, 253 S.W.3d at 280–81; *see also Howard*, 2013 WL 3943121, at *5. In short, we do not find the State's reasoning persuasive under the facts of this case.

With regard to prejudice, Chavez could meet his burden by showing that his defense would be impaired by the delay. *See Cantu*, 253 S.W.3d at 285. Chavez argued in his motion and at the hearing that he was prejudiced by the delay because witnesses would be "impossible" to locate and, if located, their memories would have faded. In response to the State's assertion that the locations of both child protection case workers involved in the case and the alleged child victim were known, defense counsel responded: "I've tried a case recently where two years have passed, [and] the [sexual assault examination] nurse didn't remember the person. How can you remember somebody after six and a half years?" At the hearing on the State's motion for reconsideration, defense counsel added that he was also concerned he would be unable to locate the alleged victim's natural father, who had been mentioned as a potential perpetrator in the earlier investigation, and that the delay denied counsel an opportunity to cross-examine the alleged victim at or near the time of his outcry. Considering the lessened burden, we conclude that Chavez made a sufficient showing of prejudice. *See id.* at 280–81; *see also Doggett*, 505 U.S. at 655–56 ("[W]e generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, . . . it is part of the mix of relevant facts, and its importance increases with the

9

length of delay."); *Howard*, 2013 WL 3943121, at *5 ("Indeed, prejudice is not limited to the specifically demonstrable, and affirmative proof of particularized prejudice is not essential in every case.").

Given the State's complete lack of explanation and the lengthy, six-year delay, we conclude that Chavez met his burden to show that he timely asserted his right to a speedy trial and showed adequate prejudice. *See Cantu*, 253 S.W.3d at 280–81. In light of the foregoing, the trial court did not err in dismissing Chavez's indictment on speedy trial grounds. *See Barker*, 407 U.S. at 533; *Cantu*, 253 S.W.3d at 282; *see also Krizan-Wilson*, 354 S.W.3d at 815. We overrule the State's sole issue.

## IV. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 21st
day of November, 2013.

10